**In re MCI WORLDCOM, INC. SECURITIES LITIGATION**

No. 99–CV–3136(ILG).

United States District Court, E.D. New York.

April 13, 2000.

Robert J. Berg, Stanley Bernstein, Bernstein Liebhard & Lifshitz, LLP, New York City, for plaintiff.

Paul C. Curnin, New York City, for defendant.

### CORRECTED MEMORANDUM AND ORDER

GLASSER, District Judge.

This is an action against MCI Worldcom, Inc. ("MCI") brought by plaintiffs on their own behalf and on .behalf of a class consisting of all persons who sold securities of SkyTel Communications, Inc. ("Sky-Tel") on the open market during the period of May 25, 1999 through May 28, 1999. Plaintiffs assert securities fraud claims against MCI pursuant to Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b–5, 17 C.F.R. § 240.10b–5. Plaintiffs contend that misleading statements by MCI artificially deflated the share price of SkyTel, which MCI acquired soon after those statements were made. SkyTel is not named as a defendant in this case.

The first complaint was on June 3, 1999, and four substantially similar complaints followed. *See* Affidavit of Paul C. Curnin dated December 30, 1999 ("Curnin Aff."), ¶¶ 2–6. The pending First Consolidated and Amended Class Action Complaint was filed on November 15, 1999. *Id.* ¶ 9 ("Compl.").

Defendant MCI moves to dismiss the Complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act ("PSLRA"). For the reasons stated below, defendant's motion is denied.

### FACTS AS ALLEGED IN THE COMPLAINT

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all of the well-pleaded facts as true and draw all reasonable inferences from those allegations in favor of plaintiffs. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Cohen v. Koenig*, 25 F.3d 1168, 1171–72 (2d Cir. 1994); *Gant v. Wallingford Board of Education*, 69 F.3d 669, 673 (2d Cir.1995). The Court's function is "not to weigh the evidence that might be presented at trial, but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985). Therefore, dismissal is appropriate only if the plaintiffs can prove no set of facts that would entitle them to relief. *Id.* at 1065; *In re Computer Associates Class Action Securities Litigation*, 75 F.Supp.2d 68, 72 (E.D.N.Y.1999). The facts as alleged by the plaintiffs are as follows:

In early 1999, SkyTel, then a leading provider of wireless messaging services in the United States, had been the subject of

takeover rumors for several months. Compl. ¶¶ 14, 15. When SkyTel announced its first quarter 1999 results on April 20, 1999, it also announced that subscriber growth was significantly below expectations and that the investment bank Warburg Dillion Read LLC had been retained to assist the company in evaluating its strategic alternatives. *Id.* ¶ 15. This caused more takeover speculation, as an announcement of this type often signals that a company is seeking to be acquired. *Id.* ¶¶ 15, 16. Dow Jones News Service reported that the price of SkyTel shares rose 12% due to these rumors. *Id.* ¶ 16. An analyst for Bear Sterns & Co. named MCI, one of the largest telecommunications companies in the United States, as a potential suitor for SkyTel. *Id.*

The takeover rumors subsided over the next few weeks. But during the morning of May 25, 1999, an Internet news service, the Company Sleuth, reported that MCI had registered "skytelworldcom.com" as an Internet domain name. *Id.* ¶ 17. It has become common practice for corporations to register domain names prior to their actual use in order to protect companies from "cyber-squatters," individuals who register domain names perceived to have value in order to sell the names at high prices to companies for whom the names are valuable. *Id.*

On May 25, 1999, shares in SkyTel opened at $18.875. When news of the new Internet address was reported sometime that morning, takeover rumors again flourished, sending SkyTel shares to as high as $21.875 around noontime, a gain of 16% from its close the previous day. *Id.* ¶¶ 18, 19.

According to plaintiffs, in order to quell the market rumors and deflate the price of SkyTel stock, sometime shortly after noon,

MCI sent Barbara Gibson to address reporters. At that time, Ms. Gibson was an official MCI corporate spokesperson and Senior Manager of Corporate Communication. When asked about the significance of the registration of the "skytelworldcom.com" name, she responded:

> From time to time, MCI Worldcom employees, sometimes acting on their own initiatives, register domain names they believe may be potential targets of domain-name squatters. In this case, the action is not an indication of official company intention.

*Id.* ¶ 20. Later, in the same session with reporters, Ms. Gibson, was questioned about a possible merger and replied, "No comment." *See* Curnin Aff.Ex. A, New York Times Article.

The market interpreted MCI's statements as a denial that it had any interest in acquiring SkyTel and immediately following Ms. Gibson's statement, SkyTel's stock price fell below the previous day's close to as low as $18.6875. Shares of SkyTel closed on May 25, 1999 at $20.125 per share on volume of 7.5 million shares, three times the stock's recent average daily volume. Compl. ¶ 21.

Plaintiffs allege that MCI's statements were materially misleading because SkyTel and MCI had in fact been negotiating a merger since early February 1999.[1] During the last three weeks of April 1999, SkyTel, MCI and their advisors were negotiating specific terms for the merger and conducting further due diligence. By May 25, 1999, nearly all the significant terms of the agreement had been negotiated, including the exchange price ratio for the stock. At that time, the agreement was awaiting finalization of the last details and final approval by the companies' boards of directors. ¶ 19.

---

1. Plaintiffs allege, in the alternative, that even if the challenged statement was literally true, defendant had an obligation to correct the false impression the statement created, as evidenced by the reports in the media. Because this Court finds that plaintiffs have stated a cause of action and they have pleaded materially misleading statements with sufficient particularity to satisfy Fed.R.Civ.P. 9(b), it is not necessary to pass on the merits of plaintiffs' alternative legal theory.

On May 28, 1999, MCI announced an agreement to buy SkyTel for $1.3 billion in stock, or approximately $21.50 per SkyTel share. *Id.* ¶ 22. The agreement provided that SkyTel shareholders were to receive .25 shares of MCI stock for each share of SkyTel stock they owned. *Id.* The merger was completed October 1, 1999. In June of 1999, the SEC launched an investigation into MCI's denial of plans to acquire SkyTel, and requested all documents related to the SkyTel negotiations. ¶ 24.

According to plaintiffs, MCI's motive for the false denial on May 25, 1999 of its intention to takeover SkyTel was to deflate SkyTel's share price and to avoid having to pay more if SkyTel's stock price rose prior to the announcement of the merger.

## ARGUMENT

I. *Violation of Section 10(b)*

### A. *The Legal Standards*

▌] Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), provides: "It shall be unlawful for any person . . . to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." To state a prima facie case under Section 10(b), plaintiffs must allege: (1) a misrepresentation or omission; (2) of material fact; (3) made with scienter; (4) upon which plaintiffs relied; and (5) which proximately caused plaintiffs' injuries. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 177 (2d Cir.1998), *cert. denied*, 525 U.S. 1104, 119 S.Ct. 870, 142 L.Ed.2d 772 (1999); *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir.1995).

### B. *False or Misleading Statements*

▌ Absent a specific duty to disclose, companies are not under any obligation to publicly report ongoing merger negotiations and may remain silent. *See Basic Inc. v. Levinson*, 485 U.S. 224 at 239 n. 17, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988); *Chiarella v. United States*, 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980). The Supreme Court has held that " '[n]o comment' statements are generally the functional equivalent of silence," and that "[s]ilence, absent a duty to disclose, is not misleading under Rule 10b–5." *Basic*, 485 U.S. at 239 n. 17, 108 S.Ct. 978; *Glazer v. Formica Corp.*, 964 F.2d 149, 156–57 (2d Cir.1992). Had MCI replied "no comment" to questions about the merger, and said nothing more, the Complaint would not state a cause of action for securities fraud. However, MCI said more than "no comment." In response to a question regarding the significance of the registration of the "skytelworldcom.com" MCI's spokesperson stated "[i]n this case, the action is not an indication of official company intention." The question is whether this statement could entitle the plaintiffs to relief under 10(b)(5).

▌ Defendant first argues that Gibson's statement was not false and says nothing about MCI's intent with respect to SkyTel, and therefore cannot be the basis of a claim for securities fraud. Def.'s Mem. at 6. According to the defendant, the "action" Gibson was referring to was registration. Her statement in effect was that registration "is not an indication of official company intention," rather than a statement denying "official company intention" to acquire SkyTel.

Upon reviewing the Complaint, this Court finds that Plaintiffs' claims that MCI's statements were false or misleading have been pleaded with sufficient particularity to satisfy the PSLRA's heightened pleading requirements and Rule 9(b). The Complaint alleges the specific statement, the reasons why they believe the statement is misleading, and the facts on which that belief is formed. *See* 15 U.S.C. § 78u–4(b)(1). At the time the statements were made, ongoing merger discussion were clearly taking place. These statements were reasonably interpreted to mean that MCI had no plans to acquire

SkyTel. Ms. Gibson spoke to the press specifically to address the question of whether a merger was in the offing. She could have said "no comment" and nothing more. But, when she said "the action is not an indication of official company intention," she suggested that MCI had no intention to acquire SkyTel. This is how a number of sophisticated news organizations interpreted her answer, notwithstanding the "no comment" statement made later. *See* Curnin Aff.Ex. A, *New York Times* article ("MCI Worldcom ... issued what many investors took to be a firm denial that it might acquire SkyTel ..."); May 26, 1999 *Associated Press Newswires* story, "Internet domain address sparks Skytel–MCI WorldCom merger talk" ("While this week's online report reignited merger rumors and sent SkyTel's stock up $2.94 per share to $21.88 in a 15–minute span on Tuesday, MCI WorldCom officials say such a union is not to be.")[2] Moreover, immediately following that announcement, the price of SkyTel shares fell sharply, a further indication that the public viewed the statement as a denial of merger rumors.

■ Defendant also argues that MCI cannot be liable for statements relied upon by the shareholders of a different company. Def.Mem at 7 n. 2; Reply.Br. at 8 n. 4. This argument is without merit, as there is no such limitation on the scope of the defendant's Section 10(b) duty. "Because most publicly available information is reflected in market price, an investor's reliance on *any public material misrepresentation*, therefore, may be presumed for the purposes of a Rule 10b–5 action." *Basic*, 485 U.S. at 247, 108 S.Ct. 978 (emphasis added); *see also In re Columbia Securities Litigation*, 747 F.Supp. 237 (S.D.N.Y.1990)

(denying motion to dismiss securities action brought by former shareholders of target company against acquiring company for falsely denying existence of merger negotiations); *Buxbaum v. Deutche Bank, A.G.*, 98 Civ. 8460 (S.D.N.Y. March 6, 2000) (same).

Defendant urges the Court to follow the Fourth Circuit's decision in *Phillips v. LCI International, Inc.*, 190 F.3d 609 (4th Cir. 1999), and dismiss the Complaint. The *Phillips* plaintiffs alleged that LCI violated Section 10(b) when its CEO told a reporter "[w]e're not a company that's for sale" on February 17, 1998. *Id.* at 612. The plaintiffs contended that the CEO's statement was a false denial of the ongoing negotiations. *Id.* at 616.

The Fourth Circuit, recognizing that "this is a close question," affirmed the dismissal of a securities fraud complaint. But *Phillips* is distinguishable from the present case. First, unlike the SkyTel situation, at the time LCI's Thompson made the statement that "[w]e're not a company that's for sale," no merger talks were ongoing. The Fourth Circuit opinion notes that while LCI and Qwest had held merger negotiations in the Fall of 1997, the LCI Board rejected Qwest's offer on December 15, 1997, and on December 16, 1997, LCI sent Qwest's chief executive a letter advising him that "LCI was not for sale." *Phillips*, 190 F.3d at 615–16. That situation had not changed at the time of Thompson's February 17, 1998 statement that "[w]e're not a company that's for sale." Based on the facts of the case, the Fourth Circuit concluded that, in context, Thompson's statement was not a misrepresentation of a material fact. *Id.* at 619.

The present case is more akin to *Buxbaum v. Deutsche Bank, A.G.*, 98 Civ. 8460

---

**2.** The Court may consider documents incorporated by reference in the pleadings and matters of which judicial notice may be taken. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir.1991); *In re Health Management, Inc. Securities Litig.*, 970 F.Supp. 192, 199 (E.D.N.Y.1997). The Court also should consider documents that, while not explicitly incorporated in the complaint, are "integral" to plaintiffs' claim or are relied on by them. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir.1991); *see also San Leandro*, 75 F.3d at 808–09; *Brass v. American Film Technologies*, 987 F.2d 142, 150 (2d Cir.1993).

(S.D.N.Y. March 6, 2000), recently decided by Judge Koeltl. In *Buxbaum*, plaintiffs were a class of persons who had sold Bankers Trust stock. The defendant, Deutsche Bank, acquired Bankers Trust. While merger discussions were ongoing, Rolf–Ernst Breuer, the CEO of Deutsche Bank, gave an interview to a German newsmagazine. When asked whether Deutsche Bank was interested in acquiring Bankers Trust, he responded: "There is nothing I could tell our shareholders." When the reporter then asked if there hadn't been talks with Bankers Trust, Mr. Breuer stated: "In this business, everybody talks to everybody. But there was no talk of a takeover." The price of shares in Bankers Trust fell sharply following the publication of the interview. A month later, Deutsche Bank announced it was acquiring Bankers Trust. In denying defendants' motion to dismiss, the court in *Buxbaum* found that Breuer's statement was false or misleading, and that it was material.

### C.  *Materiality*

■  Defendant argues that even if its statement amounts to a false denial of the impending merger, it is not actionable because it was immaterial. Def.'s Mem. at 9 n.4. Information is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic*, 485 U.S. at 231–32, 108 S.Ct. 978 (quoting *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 448–49, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976)). Moreover, a complaint may not be dismissed pursuant to Rule 12(b)(6) on the grounds that the alleged misstatements are not material unless they are "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Koppel v. 4987 Corp.*, 167 F.3d 125, 133 (2d Cir.1999); *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985).

■  The allegations in the Complaint support plaintiffs' claims that defendant's statement was misleading and material. The omitted information—the fact that final merger negotiations between MCI and SkyTel were almost completed when defendant issued its denial of any official company intention—"might have given a reasonable investor pause" in deciding whether to sell or hold their SkyTel shares. *See Kaplan v. Rose*, 49 F.3d 1363, 1374 (9th Cir.1994), *cert. denied*, 516 U.S. 810, 116 S.Ct. 58, 133 L.Ed.2d 21 (1995). That non-disclosure of the omitted information would have been viewed by the reasonable investor as having altered the "total mix" of information made available by defendant.

There was a drop in the price of SkyTel common stock immediately following MCI's statement, which also supports plaintiffs' allegations of materiality. *See e.g., Blanchard v. Edgemark Financial Corp.*, No. 94 C 1890, 1999 WL 59994 at *12 (N.D.Ill. Feb.3, 1999) ("we cannot conclude at this stage of the litigation that the pre-merger negotiations were immaterial as a matter of law ... [I]t is clear that the merger had a dramatic impact on the value of the stock.... This fact alone demonstrates that the merger was an event of significant magnitude").

In *In re Columbia Securities Litig.*, 747 F.Supp. 237 (S.D.N.Y.1990), Judge Sand upheld a complaint's 10b–5 allegations where defendant falsely denied in press accounts the existence of merger negotiations. In fact, early-stage negotiations had been ongoing between executives of the respective companies. The court held:

"In view of the allegations demonstrating substantial indicia of interest, and the importance of the transaction in the life of Columbia, this Court concludes that a reasonable Columbia stockholder might have viewed disclosure of the alleged merger negotiations as altering the total mix of information available at

the time the press statements were made."

*Id.* at 243–244.

## II. *Scienter*

In 1995, Congress enacted the PSLRA which provides that plaintiffs must, "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). The "required state of mind" for a Section 10(b) or Rule 10b–5 violation is scienter, "an intent to deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193 n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).

■ In this Circuit, a plaintiff can plead fraudulent intent in one of two ways: (1) by identifying circumstances indicating conscious or reckless behavior by the defendant, or (2) by alleging facts showing a motive to commit fraud and a clear opportunity to do so. *Press v. Chemical Investment Services Corp.,* 166 F.3d 529, 537–38 (2d Cir.1999); *In re Computer Associates Class Action Securities Litigation,* 75 F.Supp.2d 68, 72 (E.D.N.Y.1999). To meet this standard, plaintiffs must do more than offer "claims of fraud on speculation and conclusory allegations." *See Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994) (explaining that Rule 9(b) is intended to "safeguard a defendant's reputation from improvident charges of wrongdoing" and to protect a defendant from strike suits). In this case, plaintiffs have properly alleged scienter through motive and opportunity. They have also alleged facts from which an inference of conscious misbehavior or recklessness may properly be drawn.

### A. *Defendant's Motive*

■ To show motive, plaintiffs must show "concrete benefits [to a defendant] that could be realized by one or more of the false statements and wrongful nondisclosures alleged." *Chill v. General Elec-tric Co.,* 101 F.3d 263, 268 (2d Cir.1996). Plaintiffs' allegations of motive, as set forth in the Complaint, have met this standard. Plaintiffs assert that MCI was motivated to artificially deflate the price of SkyTel stock in order to help ensure that the acquisition price would not have to be increased. It also did so to make the intended takeover more attractive and at a higher premium than if SkyTel's stock price had remained higher because of the merger rumors reignited by the news stories reporting on the registration of the skytelworldcom.com domain name. ¶¶ 20, 23, 29.

### 1. *Gibson's knowledge of the merger*

In response, defendant asserts that plaintiffs fail to allege that Gibson had any knowledge of the confidential merger negotiations, and that such knowledge cannot be assumed or conclusorily asserted. *See In re Advanta Corp. Securities Litig.,* 180 F.3d 525, 539 (3d Cir.1999). MCI argues that if Gibson is not alleged to have had any knowledge of the confidential merger negotiations, opportunity has not been sufficiently alleged. Def.'s Mem. at 15. Gibson's knowledge of the merger is a matter of factual dispute for discovery. At this stage, the Court finds that it is reasonable to assume the official MCI spokesperson, the Senior Manager of Corporation Communications at MCI, did know of an impending merger which was announced three days later.

### 2. *The setting of the price*

When assessing motive, the Second Circuit assumes "that the defendant is acting in his or her informed economic self-interest." *Shields,* 25 F.3d at 1130; *see also Atlantic Gypsum Co. v. Lloyds Int'l Corp.,* 753 F.Supp. 505, 514 (S.D.N.Y.1990). Therefore, it is not sufficient for plaintiffs to allege an economically irrational motive. Defendant argues that its alleged motive is insufficient as a matter of law because the alleged fraud did not entail any "concrete" economic benefit to MCI and, therefore, it

was not in MCI's economic interests to deflate the price of SkyTel shares.

First, being able to acquire a company for a significantly reduced price is a sufficient economic benefit to satisfy the motive requirement for scienter. In *Buxbaum,* the court found that plaintiffs sufficiently alleged that defendants had a motive to depress the stock price of the target company:

> Mr. Breuer, as CEO of the Deutsche Bank, had incentive to depress the price of Bankers Trust stock. Whatever the exact basis for calculating the ultimate purchase price, it was clearly in a purchaser's interest that the quoted public price of the asset to be acquired was as low as possible.

Defendant argues that it had no incentive to deflate the value of SkyTel's stock. The price for the acquisition had already been set at the time of the May 25, 1999 press conference, and therefore MCI was without a motive to defraud. Def.'s Mem. at 13, 14. This assertion is not persuasive for the reason that follows.

MCI was acquiring SkyTel for stock. The purchase price was determined by the number of MCI shares to be exchanged for each SkyTel share, which was set by the "exchange ratio." Curnin Aff. ¶ 11. That ratio depended on the value of MCI's stock as measured by an objective formula. However, although the Complaint states that the exchange ratio had been negotiated by May 25, it does not allege that it had been finalized. ¶¶ 19, 20. In fact, the exchange ratio had not been precisely fixed at the time of MCI's public statement. SkyTel Proxy at 18.[3] On May 25, 1999, MCI proposed, among other things, adjusting the exchange ratio upward in the event that trading prices for MCI shares declined. *Id.*

Plaintiffs and defendant disagree on the effect of a drop in SkyTel's share price on MCI's economic position during the time leading up to the merger. Plaintiffs argue that an increase in SkyTel's price may have compromised the deal or at least caused MCI to renegotiate the terms of the acquisition. To support this assertion, plaintiffs point out that the Class Period's artificially low level of SkyTel stock is referenced in SkyTel's Proxy statement, which was sent to its shareholders to encourage them to approve the merger. Under both the headings "Market Price and Dividend Information" and "Comparative Stock Price and Dividends," the closing price of SkyTel on May 27, 1999—in the middle of the Class Period—is set forth as a reference point for shareholders. Proxy Statement at 5, 32.

Defendant argues that SkyTel's stock price was irrelevant to the deal. If MCI's stock price went down, SkyTel shareholders would receive more MCI shares, and if MCI's price rose, SkyTel shareholders would receive less—regardless of where SkyTel stock was trading. What effect a drop in SkyTel's share price may have had on the merger is likely to be the subject of expert analysis and should not be resolved at this stage. It is sufficient that plaintiffs have alleged facts in the Complaint that support a plausible motive for MCI to make false statements in order to deflate SkyTel's stock price.

This is in sharp contrast to *Phillips,* again relied on by defendant, Def.'s Mem. at 14, where the Fourth Circuit discussed at length why the allegations of motive were implausible. Among the reasons noted by that court was that LCI's chief executive initially voted against the merger. In addition, as the chief executive of the target company, there was no financial gain for Thompson to achieve by falsely denying that the company was for sale. Here, as the acquirer, MCI may have been motived by potential economic gains to falsely deny merger talks.

---

3. The Court can consider the full text of documents filed with the SEC, such as SkyTel's Proxy Statement, without converting defen-

dant's motion into one for summary judgment. *See Kramer,* 937 F.2d at 773–74.

### B. *Opportunity*

To demonstrate "opportunity," plaintiffs must show that a defendant had both the means and likely prospect of achieving those concrete benefits. *Chill,* 101 F.3d at 267 n. 4 (citing *Shields,* 25 F.3d at 1130). Defendant argues that plaintiffs do not allege any facts illustrating that MCI had the prospect of benefitting from the allegedly fraudulent statement because depressing SkyTel's stock price on May 25 could not impact the acquisition price. Further, defendant asserts that there is no allegation that Ms. Gibson had the means to accomplish the alleged fraud because plaintiffs do not claim that she knew about the merger negotiations. For the same reasons as discussed above, these arguments are not persuasive.

### C. *Conscious Misbehavior*

■ Plaintiffs have also alleged "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness" by MCI. *Press,* 166 F.3d at 537–38. The Complaint alleges that three days prior to the announcement of the merger, MCI's official corporate spokesperson falsely denied any "official company intention" regarding the registration of a domain name that was an obvious combination of MCI's and SkyTel's names. ¶¶ 17, 20–22. The market understood the denial to mean there would be no takeover, as evidenced by the drop in SkyTel's price. ¶ 21. The New York Times article appended to defense counsel's affidavit indicates that it was MCI itself that registered the domain name, and not, as Ms. Gibson suggested, an MCI employee acting alone. Curnin Aff.Ex A. These facts demonstrate conscious misbehavior or recklessness on the part of MCI sufficient to plead scienter.

### III. *Loss Causation*

■ To survive this motion, plaintiffs must properly plead "loss causation." *See*

*Bennett v. United States Trust Co.,* 770 F.2d 308, 313 (2d Cir.1985). To do so, "the plaintiff must demonstrate that 'the damages complained of [were] a foreseeable result of the plaintiff's reliance on the fraudulent misrepresentation.'" *Vento & Co. of New York v. Metromedia Fiber Network, Inc.,* 97 Civ. 7751(JGK), 1999 WL 147732 at *8 (S.D.N.Y. Mar. 18, 1999) (quoting *Weiss v. Wittcoff,* 966 F.2d 109, 111 (2d Cir.1992)).

The Complaint sets out a causal connection between movement in SkyTel's stock price and Gibson's statement. As alleged by plaintiffs, SkyTel's stock opened on May 25, 1999 at $18.875 per share. When news services reported that MCI had obtained the new internet address, the stock price increased to $21.875. Shortly after noon, Ms. Gibson made the material misleading statement and soon after, the share price fell of MCI to as low as $18.6875. Shares closed that day at $20.125, on three times the normal daily volume for that stock.[4]

Defendant argues that SkyTel's stock had dipped below its high for the day before Gibson's statement was released, which it claims occurred at or about 1:45 p.m. Such a factual dispute over the time of the announcement, highly relevant to plaintiffs' allegations, is inappropriate for resolution at this stage in the proceedings. *Weiss,* 966 F.2d at 112 (reversing district court's dismissal on loss causation and reminding that "[a]lthough it remains to be seen whether Weiss can prove his allegations, the court's task on a Rule 12(b)(6) motion is not to rule on the merits of plaintiffs' claims, but to decide whether, presuming all factual allegations of the complaint to be true, and drawing all reasonable inferences in the plaintiff's favor, the plaintiff could prove any set of facts which would entitle him to relief."). Plain-

---

4. The court can take judicial notice of SkyTel's historical stock prices. Fed.R.Evid. 201;

*Kramer,* 937 F.2d at 773.

tiffs' allegations of loss causation are sufficient to survive a motion to dismiss.

## CONCLUSION

For the foregoing reasons, this Court denies defendant's motion to dismiss.

SO ORDERED.