Steven GOLDMAN, on behalf of himself and all others similarly situated, Plaintiff,

v.

G.C. BELDEN, Jr., John R. Sykes, Robert F. Sykes and Sykes Datatronics, Inc., Defendants.

No. CIV–82–869T.

United States District Court, W.D. New York.

Feb. 24, 1984.

Handelman & Witkowicz, Rochester, N.Y. (Martin S. Handelman, Rochester, N.Y., of counsel), Barrock, Rodos & Bacine, Philadelphia, Pa. (Gerald Rodos, Philadelphia, Pa., of counsel), Milberg, Weiss, Bershad, Specthrie & Lerach, New York City (Melvin I. Weiss, New York City, of counsel), for plaintiff.

Harter, Secrest & Emery, Rochester, N.Y. (Kenneth Payment, Rochester, N.Y., of counsel), for defendants.

## MEMORANDUM DECISION and ORDER

TELESCA, District Judge.

### BACKGROUND

Plaintiff, personally and purportedly as a representative of others similarly situated, commenced this action against Sykes Datatronics, Inc., ("Sykes") and several of its directors and officers alleging violations of Section 10b of the Securities Exchange Act of 1934, 15 U.S.C. Section 78j(b), and Rule 10b–5, 17 C.F.R. Section 240.10b–5, promulgated thereunder. Defendants initially moved to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) and for failure to comply with the pleading specificity requirements of Fed.R.Civ.P. 9(b). In a decision dated August 11, 1983, *Goldman v. Belden*, 98 F.R.D. 733, this Court dismissed plaintiff's complaint for failure to comply with Rule 9(b), without prejudice to the filing of an amended complaint in conformance with that rule. Plaintiff filed an amended complaint [1] and defendants now again move to dismiss. For the reasons set forth below, defendants' motion is granted and the amended complaint is dismissed.

### UNCONTROVERTED FACTS

The factual background of this action is set forth at some length in this Court's previous decision, familiarity with which is assumed. However, a reiteration of some

---

1. The original complaint was brought against the corporation and all ten of its directors. The amended complaint sues only the corporation and G.C. Belden, Robert F. Sykes and John R. Sykes.

of this history will be necessary to understanding this decision.

Sykes, a New York corporation with its principal place of business in Rochester, New York, is engaged primarily in the design, manufacture and marketing of microcomputer systems with data processing and communication applications. In early 1978 Sykes introduced its COMM–STOR family of terminal attachment products. A business which purchased a COMM–STOR attachment was able to record information on telephone calls made by its employees including the time of day, the length of the call and to whom it was made. As a result of the success of the COMM–STOR line, Sykes' sales and earnings per share effectively doubled in each of its fiscal years between 1978 and 1982.[2] Sykes' main customer during that period was American Telephone and Telegraph Company (AT & T), sales to which represented approximately 80% of the Company's total sales.

In early 1982 Sykes was prepared to market a new product called "INNVOICE" which was a device enabling a hotel to record long distance phone calls made directly by guests from their rooms. In mid-1980 the Federal Communications Commission had issued a ruling allowing hotel and motel owners to resell their telephone charges to guests at a profit. Thus, INNVOICE was intended by Sykes to capitalize upon this new market. For reasons which will be discussed more fully later, INNVOICE did not produce the revenues expected in the early part of fiscal year 1983. However, during the first six months of 1982 defendants continued to express high expectations of INNVOICE and the potential revenues to be derived from its sale.

On August 26, 1982 plaintiff purchased 1,000 shares of Sykes common stock at $15.50 per share. On August 30, 1982 Sykes issued a press release which indicated that its second quarter earnings in fiscal year 1983 would be significantly below previous years and also below prior estimates. Immediately after the press release, the price per share of Sykes common

stock dropped from $13.00 per share to $7.75 per share. As was observed by Judge Van Graafeiland, in *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 114 (2nd Cir.1982), "[t]his is the type of economic climate in which Section 10(b) litigation flourishes".

### THE AMENDED COMPLAINT

Plaintiff alleges that Sykes, its president and chief operating officer G.C. Belden, its vice-president and director John R. Sykes and its chairman of the board and chief executive officer Robert F. Sykes, violated Section 10(b) and Rule 10b–5 by making material misrepresentations and omissions concerning the short term outlook of the company and its projected sales and profits. The complaint cites several statements disseminated by defendants as fraudulent. First, the Sykes 1982 Annual Report ("1982 Annual Report") issued on May 7, 1982 and specifically a letter to shareholders and employees contained in that report signed by defendants Robert Sykes and Belden which projected a year of strong growth in earnings and sales and stressed the positive aspects of the breakup of AT & T for Sykes' future opportunities (Amended Complaint Para. 32). Second, a press release issued by Sykes on June 16, 1982 ("June 16th press release") announcing that first quarter 1983 earnings were down from the previous year but indicating that the situation was improving (Amended Complaint Para. 33). Third, plaintiff cites statements made by defendants Belden and Robert F. Sykes at the annual meeting held on June 16, 1982, a transcript of which was disseminated to the public, ("June 16th Transcript") which indicated that the AT & T breakup would provide increased opportunities to Sykes, that two situations which contributed to Sykes' sluggish first quarter were improving and that Sykes was going to try to increase sales and earnings in the range of forty to fifty percent during fiscal year 1983. Finally, plaintiff claims that the Sykes First Quarter fiscal year 1983

---

**2.** Sykes' fiscal year runs from March 1st to February 28th.

Report issued on June 28, 1982 ("First Quarter Report") was materially false because it indicated that there was an outlook for good growth in the future and that there was improvement in two situations relating to a new COMM–STOR product and INNVOICE which had been mentioned originally in the 1982 annual report and repeated at the 1982 annual meeting as responsible for the sluggish first quarter growth. (Amended complaint para. 35).

Plaintiff claims that all of these statements were materially false because (a) Sykes "failed to disclose that the breakup of AT & T created substantial uncertainties about the structure and marketing practices of the Bell System" (Amended complaint para. 42(a)); (b) Sykes projected strong growth based upon sales of INNVOICE when in fact "there were significant technical and sales problems and grave uncertainties associated with the introduction and marketing of INNVOICE" (Amended complaint paras. 29, 42(b))[3]; and, (c) Sykes indicated that the problems experienced in first quarter of fiscal 1983 were improving when in fact there was no

basis for such optimism (Amended complaint paras. 43–44). Plaintiff further alleges that "[d]efendants had actual knowledge of the materially false and misleading statements and material omissions ... and thereby intended to deceive plaintiff ... or in the alternative, defendants acted with ... reckless disregard for the truth". (Amended complaint para. 46).

Finally, plaintiff alleges that during the class period[4] the individual defendants sold substantial amounts of Sykes common stock at "artificially inflated" prices, while at the same time "making very specific and optimistic projections about Sykes' near term prospects" (Amended complaint paras. 36, 47).[5]

## DISCUSSION

Defendants have moved to dismiss the amended complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) and for failure to meet the specific pleading requirements to state a fraud cause of action set forth in Fed.R.Civ.P. 9(b). Plain-

---

3. In Paragraph 29 of the amended complaint plaintiff cites the following problems with INNVOICE which defendants failed to make public:

(a) That INNVOICE would be marketed through AT & T which required regulatory approvals and would delay entry of INNVOICE into the market causing a competitive disadvantage;

(b) That AT & T would have to lease INNVOICE to hotels and motels rather than selling it as competitors would do thereby denying ultimate customers the tax advantages of ownership;

(c) That due to the restrictive regulatory structure, AT & T's tariffs could not be negotiated whereas hotel owners would be able to freely negotiate the price of the competing systems;

(d) That the regulatory system also would delay or prevent the addition of new components to the INNVOICE system;

(e) That INNVOICE was not compatible with many computers already installed at hotels and motels whereas "[s]ome competing hotel phone-call accounting systems had the capability and therefore were more attractive";

(f) That INNVOICE as originally marketed could not calculate charges for international phone calls putting it at a disadvantage in cities where many international calls were made such as New York, San Francisco, Los Angeles, and Miami; and

(g) That there were grave uncertainties surrounding the future structure and marketing practices of the Bell System due to the anti-trust action which was being settled with the Government at that time.

4. Plaintiff purports to represent all persons who purchased Sykes common stock between May 7, 1982 (the date the 1982 Sykes Annual Report was issued) and August 30, 1982 (when the press release was issued indicating slumping sales and earnings for the second quarter of fiscal 1983). This period is referred to in the amended complaint as the "class period".

5. Plaintiff does not allege that any of these sales violate any specific insider trading rules of the Securities and Exchange Commission. Rather, they are presumably included as further evidence of defendants' fraudulent conduct. Specifically, it is alleged that defendant Robert Sykes sold 29,000 shares or 8% of his total holdings during the class period and that defendant Belden sold 400 shares during the class period. It is also alleged that defendant Belden sold 10,000 more shares "shortly prior" to the class period although no further specification of when such sales occurred is given. Finally, plaintiff alleges that defendant John Sykes sold 40,000 shares of Sykes common stock or 26% of his total holdings during the class period.

tiff's allegations of wrongdoing center upon the Sykes 1982 Annual Report, the June 16th press release, the First Quarter Report and statements of defendants Robert Sykes and Belden during a transcribed question and answer session at the 1982 Sykes Annual Meeting. Because copies of all of these documents are presently before the Court, having been submitted on defendants' original motion, and because their authenticity and accuracy have not been questioned, they may properly be considered on this motion in determining whether the amended complaint fairly states a claim under Rule 10b–5. Cf. *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 113 (2nd Cir.1982); *Denton Construction Co. v. Missouri Portland Cement Co.*, 507 F.Supp. 53, 54 (E.D.Mo.1981).

Further, for present purposes we may assume that the amended complaint now before the Court is a model of clarity and precision and that plaintiff has now set forth all of the factual allegations he can muster in support of his claim. Thus, if the amended complaint does not state a valid cause of action, it must now be dismissed with prejudice. *See Goldman v. Singer Co.*, 89 F.R.D. 436 (S.D.N.Y.1981), aff'd. without opinion, 661 F.2d 908 (2nd Cir.1981).[6]

### I.

The Securities Acts of 1933 and 1934 were designed to provide investors with full disclosure of material information concerning public offerings of securities in commerce and to protect investors against fraud and deception. *Ernst and Ernst v. Hochfelder*, 425 U.S. 185, 195, 96 S.Ct. 1375, 1382, 47 L.Ed.2d 668 (1976). Section 10 of the 1934 Act makes it "unlawful for any person ... (b) [t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appro-

priate in the public interest or for the protection of investors." 15 U.S.C. Section 78(j). In 1942, pursuant to the power conferred by Section 10(b), the Commission promulgated Rule 10b–5 which provides in pertinent part:

*Employment of manipulative and deceptive devices.*

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility or any national securities exchange, ...

(b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or

(c) to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person,

... in connection with the purchase or sale of any security.

It is well established that Section 10–b was not designed to regulate corporate mismanagement or to prohibit conduct which does not involve manipulation or deception. *Santa Fe Industries Inc. v. Green*, 430 U.S. 462, 473, 479, 97 S.Ct. 1292, 1301, 1304, 51 L.Ed.2d 480 (1977); *Decker v. Massey-Ferguson, Ltd., supra*, 681 F.2d at 115; *Rodman v. Grant Foundation*, 608 F.2d 64, 73 (2nd Cir.1979). A plaintiff in a Rule 10b–5 non-disclosure action must show more than mere negligence. "Scienter", intent to deceive, defraud or manipulate, must be established. *Ernst and Ernst v. Hochfelder, supra; Harkavy v. Apparel Industries, Inc.*, 571 F.2d 737 (2nd Cir.1978). Moreover, a cause of action is stated under Rule 10b–5 only if the conduct alleged can *fairly* be viewed as manipulative or deceptive within the meaning of the statute. *Santa Fe Industries Inc. v. Green, supra* 430 U.S. at 473–474, 97 S.Ct.

---

**6.** Coincidentally, the plaintiff in *Goldman v. Singer,* and the plaintiff herein, are one and the same. At least one of the law firms representing plaintiff in this case also represented him in *Goldman v. Singer.*

at 1301 (emphasis added); *Helfant v. Louisiana and Southern Life Ins. Co.*, 459 F.Supp. 720 (E.D.N.Y.1978). The alleged misrepresentations and omissions in the amended complaint amount to nothing more than allegations of faulty economic prognostication, which, without more, does not state a claim under the 1934 Act or Rule 10b–5. *Polin v. Conductron Corp.*, 552 F.2d 797, 805 (8th Cir.1977), *cert. denied*, 434 U.S. 857, 98 S.Ct. 178, 54 L.Ed.2d 129 (1977); *Decker v. Massey-Ferguson, Ltd., supra*, 681 F.2d at 117.

The amended complaint alleges that fraud was committed by defendants' failure to disseminate to the public the uncertainties that AT & T's breakup caused to Sykes' future growth, and the disadvantages to INNVOICE's future sales caused by marketing the product through AT & T. However, the Sykes Annual Report and First Quarter Report are replete with references to the amount of business previously conducted with AT & T and the tariffs which are required for that company to sell Sykes' wares. Thus, if plaintiff is alleging that Sykes failed to disclose its dependence upon AT & T and the peculiarities involved in dealing with AT & T, such allegations are patently false. Cf. *Rodman v. Grant. Foundation, supra*, 608 F.2d at 70; *Seibert v. Sperry Rand Corp.*, 586 F.2d 949, 952 (2nd Cir.1978). Alternatively, if plaintiff seeks to indict defendants for failing to correctly forecast the outcome of the AT & T anti-trust settlement, the allegations are spurious.

Plaintiff also relies heavily upon projections made by defendants and specifically a projection made by defendant Robert F. Sykes at the annual meeting in answer to the following question:

Q. Is there any estimate as to what kind of growth we are going to see? A. We are not aiming and not hoping to achieve a doubling of growth every year. It would be impossible for us to do it because when you keep multiplying, doubling, soon it gets very big. That doesn't tie in with one of our objectives of the

company which is to have an above earnings per share performance in terms of a PE (price earnings) rating and also to have an orderly growth ... So our growth is definitely not targeted or aimed at a doubling but we are certainly going to try to do something in the order of 40 or 50 percent or better.

In a vacuum, and disregarding for the moment the qualifications made by defendant Robert Sykes prior to making the projection, this would seem to be a rather optimistic forecast. However, this projection must be viewed in the context of Sykes' past earnings history. In the four fiscal years prior to this projection, Sykes had shown an increase in sales and earnings of 100% or more in each year. In this context, a projection of 40% or 50% could be viewed as unduly pessimistic. As Judge Lasker observed in *Denny v. Barber:* [7] "If defendants had described the vague contingencies limned in [the complaint] and reality had provided a happier turn of events, would not defendants have been liable for their gloomy publications?" Moreover, here, as in *Goldman v. Singer:*

Had defendants indeed forseen the [future] disasters and disclosed their fears in their [prior] annual report, it is now quite possible that they would be faced with a derivative action. An ingenious stockholder, supported by an array of experts, might well be contending that the company had been fundamentally sound and would have weathered the economic storms of the past several years but for defendants reckless prophesies of doom which had undermined the employee confidence so essential ... to success.

89 F.R.D. at 439.

■ Plaintiff also places great emphasis on defendants' failure to inform the public about the problems associated with INNVOICE. (Amended complaint para. 29). To the extent that plaintiff alleges that some of these problems were inherent in marketing products with AT & T, it is far from clear whether they were in fact prob-

**7.** 73 F.R.D. 6, 9 (n. 2) (S.D.N.Y.1976), aff'd, 576 F.2d 465 (2nd Cir.1978).

lems.[8] Even if it is assumed that plaintiff's complaint adequately states that these "problems" should have been disseminated to the public, the amended complaint does not state a claim that defendants failed to do so.[9]

The allegations against the individual defendants concerning their sale of stock during the class period add nothing to plaintiff's claim. The sale of 6% of an individual director's holdings during a four month period, without more, surely does not give rise to an inference of wrongdoing. Nor does the sale of a mere 400 shares by defendant Belden. The sale of defendant John R. Sykes' shares will be discussed infra.

The mere occurrence of unpredicted disaster is not a sufficient basis upon which to predicate a charge of recklessness or fraud against a corporate director. *Goldman v. Singer Co., supra,* 89 F.R.D. at 439–440. It is such a disaster, the August 30, 1982 drop in the value of Sykes common stock by 45%, which enabled plaintiff, with the benefit of hindsight, to attack the corporate directors for their failure to perceive problems with the AT & T breakup and with their INNVOICE product itself. However, a review of the amended complaint together with the statements attributed to defendants, in the context in which they were made, fails to plead a *prima facie* case under Section 10(b) or Rule 10b-5. Defendants' statements and alleged omissions, when viewed in this light, do not provide the requisite "probable cause" nec-

essary for the issuance of a "judicial search warrant" into Sykes' corporate management. *Id.* at 440. Thus, plaintiff's amended complaint fails to state a claim and must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

## II.

Even assuming plaintiff had set forth in the amended complaint a *prima facie* case that a material misstatement or omission had occurred, plaintiff has again, as in his initial attempt, failed to sufficiently plead scienter. *See Ernst and Ernst v. Hochfelder, supra.* It is true that Rule 9(b) must be reconciled with Rule 8 which encourages simplicity in pleading. *Felton v. Walston and Co., Inc.,* 508 F.2d 577, 581 (2nd Cir.1974). Yet, "this reconciliation should leave both rules intact; indeed, neither logic nor grammar requires that a specific statement of facts amounting to a claim of fraud need be anything but brief". *Denny v. Barber, supra,* 73 F.R.D. at 9.

Although plaintiff has specifically identified the alleged "misrepresentations" made by defendants, he has only in the most general terms alleged that defendants had knowledge of the falsity of these statements and the basis for that knowledge.[10] Such knowledge is critical and cannot be inferred merely because defendants were directors and officers of the corporation. *See I.I.T. an International Investment Trust v. Cornfeld,* 619 F.2d 909, 922 (2nd Cir.1980). This deficiency is fatal and mandates dismissal of the complaint.

8. Plaintiff admits that the COMM–STOR products were successfully marketed through AT & T in spite of the "lengthy tariff approvals" and the tax benefits which were unavailable to AT & T's customers due to the necessity of leasing rather than outright purchase of the equipment. He alleges, however, that one-third ($\frac{1}{3}$) of all of the COMM–STOR systems sold to AT & T were retained for internal use while none of the INNVOICE systems would be so utilized by AT & T. Yet, simple arithmetic compels the conclusion from the above data that two-thirds ($\frac{2}{3}$) of the COMM–STOR systems were successfully leased to customers by AT & T and thus, plaintiff's allegations that defendants failure to advise the public of the "obvious" problems in selling equipment through AT & T can hardly be con-

sidered *material* within the meaning of Section 10(b) and Rule 10b–5. *See TSC Industries Inc. v. Northway, Inc.,* 426 U.S. 438, 450, 96 S.Ct. 2126, 2133, 48 L.Ed.2d 757 (1976). (Holding that in order to establish materiality, there must be "a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of a reasonable shareholder".)

9. See discussion, supra, in regard to information disseminated in the Sykes annual report and quarterly report concerning its dependence upon sales to AT & T.

10. See paragraph 46 of the amended complaint.

Plaintiff has also failed to indicate when defendants allegedly came into possession of this crucial information concerning the marketing problems with INNVOICE and how that knowledge was acquired. Although at this stage of the litigation plaintiff cannot be expected to plead actual knowledge by defendants, plaintiff must at least "supply a factual basis for his conclusory allegations regarding that knowledge". *Ross v. A.H. Robbins Co.,* 607 F.2d 545, 558 (2nd Cir.1979). Plaintiff has failed to meet this vital requirement. "Rule 9(b) will have failed in its purpose if conclusory generalizations such as these will permit a plaintiff to set off on a long and expensive discovery process in the hope of uncovering some sort of wrongdoing or obtaining a substantial settlement." *Decker v. Massey-Ferguson, Ltd., supra,* 681 F.2d at 116.

### III.

In the amended complaint, plaintiff sets forth only one specific allegation against defendant John R. Sykes, that being that he sold some 26% of his Sykes common stock holdings during the period in question. (Amended complaint para. 36(a). Defendants vigorously contend that the only reason John R. Sykes was even included as a party defendant in the amended complaint was for "sensationalism", and not for any well grounded claim of securities fraud. Accordingly, they claim that paragraph 36(a) of the amended complaint violates Rule 11 of the Fed.R.Civ.P. (as amended on August 1, 1983) and that sanctions against plaintiff and his attorneys in this action are warranted.

Simply stated, Rule 11 imposes an obligation upon the attorney handling the case to certify that the pleading is factually sound and substantiated by the existing state of the law. Before the recent (August, 1983) amendment to Rule 11, the standard for imposing sanctions under Rule 11 was whether the action was commenced in "good faith". *Numeroff v.*

*Abelson,* 620 F.2d 339, 350 (2nd Cir.1980). The new standard is much stricter and permits the imposition of sanctions for failure by the attorney to make reasonable pre-filing inquiry into the facts and the law of the case.[11]

The present factual circumstances compel the imposition of sanctions in this case. Initially, plaintiff's amended complaint alleges fraud, and it is well recognized that allegations of such serious wrongdoing may substantially harm a defendant's reputation and goodwill. *Segal v. Gordon,* 467 F.2d 602 (2 Cir.1972). Although Rule 9(b) was instituted to prevent frivolous and ungrounded fraud claims from surviving a motion to dismiss, *see Felton v. Walston,* 508 F.2d 577, 581 (2nd Cir.1974), the harm caused by the mere filing of the complaint may be irreparable. Thus, it is this Court's view that the amendment to Rule 11 provides a clear direction to district courts to discourage a plaintiff and his attorney from even filing an action for fraud which lacks a sufficient factual and legal foundation. That is precisely the case here.

Plaintiff's original complaint, which named the corporation and all ten of its directors as party defendants, was dismissed with specific direction to the plaintiff to replead his claim with factual specificity and clarity. On this his second attempt, he dropped his claims against seven of the corporate directors, alleging violations of the 1934 Securities Act only against the corporation itself, Robert Sykes, G.C. Belden, and John Sykes. The single allegation made against John Sykes is that he sold 26% of his Sykes common stock holdings during the class period (Amended Complaint para. 36(a)). What is conspicuously absent from both the original and amended complaints is that John Sykes retired during the class period, making it not only reasonable, but quite logical that he would liquidate some of his securities.[12]

11. See Fed.R.Civ.P. 11 Advisory Committee note.

12. This fact was readily apparent to plaintiff. On Page 1 of the First Quarter Report appears the following statement: "At the Annual Meet-

This allegation against the defendant John R. Sykes was obviously designed to discredit him by raising the inference that he was bailing out before the ship was going to sink and to add to the general aura of wrongdoing which plaintiff was attempting to create against all defendants. This view completely overlooks what was obviously stated publicly in the First Quarter Report and could only serve to be damaging to both his individual and corporate image. Such tactics are precisely what the amendment to Rule 11 was enacted to discourage.

### · CONCLUSION

Accordingly, defendants' motion to dismiss the complaint pursuant to Fed.R.Civ.P. Rules 12(b)(6) and 9(b) is granted, and defendant John R. Sykes is awarded costs and attorney's fees in the amount of Two Thousand Five Hundred Dollars, ($2,500.00) pursuant to Fed.R.Civ.P. 11 for which plaintiff and his attorney's [13] are jointly and severally liable.

SO ORDERED.

ing of shareholders on June 16, the Company announced the retirement of John R. Sykes, a Vice-President and founder of the Company." Moreover, plaintiff had an ample opportunity to correct his original complaint but instead affirmatively chose to again include John Sykes as a defendant in the amended complaint.

13. Plaintiff and his attorneys are equally to blame for this transgression as all have had experience with securities litigation and cannot claim ignorance of the state of the law. See note 6, supra.